# OTTINGER
## EMPLOYMENT LAWYERS

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street, 14th Fl.
San Francisco, CA 94103
(415) 262-0096

OTTINGERLAW.COM

Finn Dusenbery
finn@ottingerlaw.com

May 11, 2022

**VIA ECF AND E-MAIL**

Hon. Edgardo Ramos
U.S. District Judge
U.S. District Court
40 Foley Square
New York, NY 10007

> **Re:** **Mendoza, et al. v. S.C. Management Realty, LLC, et al.**
> **No. 22-cv-1035 (ER)**

Dear Judge Ramos:

Together with Jessica Massimi, Esq., we represent Plaintiffs Onofre Mendoza and Sergio Martinez in the above-referenced matter. The parties have reached a settlement, and their executed settlement agreement is annexed hereto as Exhibit 1. I submit this letter to respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and so-order the parties' stipulation of dismissal, which is Exhibit A to the settlement agreement.

By way of background, Plaintiffs allege the following: Plaintiffs worked as construction workers at various sites around Manhattan and Plaintiff Martinez simultaneously worked as an elevator operator on Saturdays for a certain period. Plaintiff Mendoza generally worked about forty-seven and a half (47.5) hours per week and Plaintiff Martinez generally worked about fifty-five and a half (55.5) hours per week, including elevator operator work. Defendants paid Plaintiffs in cash, but sometimes paid Plaintiff Martinez by check for his work as an elevator operator. Defendants appear to have paid Plaintiff Mendoza a rate of $16.00 per hour for 50 hours per week (the total hours worked including five half-hour lunch breaks) and then $17 per hour for 50 hours per week (for purposes of the damage calculation, Plaintiffs estimated this raise to $17.00 per hour occurred at an intermediate point during Plaintiff Mendoza's employment in the liability period)[1]. Defendants appear to have paid Plaintiff Martinez hourly rates ranging from around $10.00 to $14.00 for 50 hours per week (the total hours worked including five half-hour lunch breaks) and $160.00 per week for elevator work.

Plaintiffs have alleged that Defendants (1) failed to pay them for all overtime hours worked, in violation of the FLSA, 29 U.S.C. § 207, and New York law, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; (2) failed to pay Plaintiff Martinez minimum wage under New York law, N.Y.

---

[1] Plaintiffs have a picture of a foreman's post-it showing employee hourly rates.

5/11/22
Page 2 of 6

Comp. Codes R. & Regs. tit. 12, § 142-2.1; and (3) failed to provide the wage statements required under N.Y. Lab. L. § 195. Additionally, Plaintiffs alleged – but had not amended their complaint yet – that Defendants retaliated against Plaintiff Martinez, in violation of the FLSA, 29 U.S.C. § 215, and NYLL, N.Y. Lab. L. § 215, by firing Plaintiff Martinez around February 15, 2022, 11 days after Plaintiffs filed the complaint on February 4, 2022. Further, Defendants changed the lock to the shop and gave other workers keys, except for Plaintiff Martinez.

Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted). In light of the purpose of the FLSA, a court may also consider

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstances will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. at 336 (internal quotation marks omitted). Applying these factors, the parties' settlement is fair and reasonable and should be approved.

As set forth in the settlement agreement, the parties have agreed to settle this action for a total payment of $69,000. This is an eminently fair settlement amount in light of Plaintiffs' damages and the risks of the case.

For their estimated damages, Plaintiffs calculated their regular rates of pay by taking Plaintiffs' total earnings during the week and dividing by the total hours worked. *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."); *see also* 12 N.Y. Comp. Codes R. & Regs. tit. 12 §142-2.16. Further, with respect to Plaintiff Martinez, who worked as a construction worker and also as an elevator operator on Saturdays, Plaintiffs allege that Defendants did not pay Plaintiff Martinez the correct overtime rate because his regular rate should have been calculated as the weighted average of his rate as a construction worker and elevator operator. *See* 29 C.F.R. § 778.115 ("Where an employee in a single workweek works at two or more different types of work for which different non-overtime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is

the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.").

Plaintiffs' unpaid overtime compensation totals, at most, roughly $48,984.35.  Out of this, roughly $43,638.82 is attributable to the FLSA claims.  Damages for Plaintiffs' N.Y. Lab. L. § 195 claims total $10,000.  Plaintiffs could also recover approximately $48,984.35 as double liquidated damages on their overtime and minimum wage claims.  For his retaliation claims, Plaintiff Martinez could recover approximately $5,692.50 in lost wages, $20,000 in statutory damages under N.Y. Lab. L. § 215, and damages for emotional distress.[2]

However, Plaintiffs face risks, as Defendants make the following arguments.Defendants dispute the manner in which Plaintiffs calculate their rates of pay, having asserted that the total weekly pay encompassed all regular and overtime pay. Re-calculation of the rates in this fashion would have extinguished any damages claimed by Mendoza and the majority of damages claimed by Martinez.  In addition, Defendants produced time and pay records which evidenced that Plaintiffs did not work their full schedule every single week. For instance, there were several times throughout the relevant period that Plaintiffs took paid vacation, were off for all major holidays and took off for personal reasons. With respect to Martinez' retaliation claim, Defendants wholly deny that he was fired, but that he quit his job when Defendants requested that he, along with all other employees, provide certain information for his personnel file. In light of these risks and Plaintiffs' damages, the settlement amount of $69,000 is plainly reasonable.

The settlement will allow all parties to avoid the further burdens and expenses in establishing their claims and defenses.  Plaintiffs have only filed their complaint and the parties would have to do paper discovery and depositions.  There could also be motion practice, including options for class and collective certification, as well as trial.

In addition, the settlement was reached through a mediation before court-appointed mediator Alan Gettner.  Accordingly, it is clear that the negotiations were both arm's length and free of fraud or collusion.

The settlement is also fair and reasonable in light of the purposes of the FLSA.  While there may be other employees situated similarly to the Plaintiffs, the settlement does not affect their rights in any way; they are free to bring their own claims against Defendants.  Moreover, the settlement is not confidential.  While the settlement includes a non-disparagement clause, it is mutual and includes an exception for Plaintiffs to make truthful statements and statements in litigation, administrative or legal proceedings.  *See* Ex. 1; *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, n. 65 (S.D.N.Y. 2015) (non-disparagement clause "must include a carve-out for

---

[2] Plaintiffs divided the settlement amount (after deducting attorneys' fees and costs) pro rata based on the amount of their unpaid wages (minimum and overtime) and Plaintiff Martinez's retaliation claim.  The unpaid wages were approximately $48,984.34 for both plaintiffs and the remaining amount of the settlement, or $20,015.66, was credited towards Plaintiff Martinez's retaliation claim.

truthful statements about plaintiffs' experience litigating their case."). Thus, Plaintiffs may, if they wish, discuss their FLSA claims with similarly situated employees.

In light of the excellent recovery that this settlement provides Plaintiffs, there are no policy reasons that warrant rejecting the settlement, and the settlement should be approved as fair and reasonable.

The settlement also provides for reasonable attorneys' fees and costs to Plaintiffs' counsel. Under the settlement agreement, Plaintiffs' counsel will receive a total of $23,588.80, or one-third of the total settlement amount – as attorneys' fees after deducting for costs, and $883.20 as reimbursement of costs.[3]  In determining whether a fee is reasonable, a court considers "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

Plaintiffs' counsel's time and labor warrants the requested fee. Plaintiffs' counsel interviewed the clients, drafted the complaint, conducted research into their claims, gathered documents, drafted a mediation statement and a damage estimate, participated in mediation, negotiated and revised the settlement agreement and made the instant request for settlement approval.  In total, Plaintiffs' counsel spent 52.7 hours on this action, as set forth in detail in the contemporaneous time records attached hereto as Exhibit 3, resulting in a lodestar of $14,152.50.[4]

As set forth *supra*, Plaintiffs faced a risk of loss on several claims based on disputed legal and factual issues.  Moreover, Plaintiffs' counsel took this case pursuant to a retainer agreement with the Named Plaintiff that stated that counsel would receive a percentage of the recovery only if Plaintiffs obtained a recovery.   Accordingly, Plaintiffs' counsel faced a risk of receiving little or no payment for their work depending on the outcome of the underlying claims.  Thus, the magnitude, complexities, and risks of the litigation weigh in favor of approving the requested fee.

---

[3] Plaintiffs' counsel seeks reimbursement of the following costs: $402 filing fee, $481.20 for interpreting costs, with invoices attached hereto as Exhibit 2.  Since compiling these costs, Plaintiffs' counsel has incurred additional interpreting costs but does not seek them.

[4] There are two billers identified in Ottinger Firm's time records: the undersigned ("FD" in time records), Tim Hansen ("TH").  The Ottinger Firm seeks billable rates of $300 for me as an associate, and $125 for Ottinger Firm's paralegal, Tim Hansen, and we applied those rates here.  *Surdu v. Madison Glob., LLC*, 2018 U.S. Dist. LEXIS 48356, at *25 (S.D.N.Y. Mar. 23, 2018) ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage -and- hour cases.")(collecting cases); *Agudelo v. E & D LLC*, Case No. 12-cv-960, 2013 U.S. Dist. LEXIS 50486, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013)(awarding lead counsel $350 per hour); *Carrasco v. West Village Ritz Corp.*, Case No. 11-cv-7843, 2012 U.S. Dist. LEXIS95596, 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012)("Courts in this [d]istrict have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450.").. Mr. Hansen has a B.S. in Paralegal Studies. Mr. Hansen has over five years of experience spanning across multiple practice areas, including six months of employment law related matters.

5/11/22
Page 5 of 6

Plaintiffs' counsel have extensive experience representing employees in wage and hour actions. Ottinger Firm, P.C. ("Ottinger Firm"). The Ottinger Firm is an employment law firm with offices in New York and San Francisco. We have been focusing on employment law since 1999 and have represented thousands of people over the years in various employment matters, including wage & hour class actions. Mr. Ottinger graduated from Loyola Law School and received a Juris Doctor in June 1991. Mr. Ottinger received a B.A. degree from East Stroudsburg University in 1986. Mr. Ottinger has over 20 years of legal practice experience since graduating from law school in 1991. Mr. Ottinger was admitted to practice in California in December 1991, and in New York in 1996. Mr. Ottinger began his career by clerking for Judge Robert M. Mallano of the California Superior Court in Los Angeles, California from December 1991 to 1993 and, from 1993 to 1995, working as a Deputy Attorney General for the California Department of Justice where he handled criminal appeals and trials. From 1995 to 1997, Mr. Ottinger worked as an Assistant Attorney General at the New York State Attorney General's Office where he handled employment and civil rights matters in federal court, including serving as lead trial counsel in over twelve federal jury trials involving civil rights and employment discrimination matters. Mr. Ottinger worked from 1997 through 1999 as an associate at the firm of Dienst & Serrins where he managed the firm's employment practice, represented plaintiffs in a wide range of employment matters, and served as lead trial counsel in 3 federal jury trials. Mr. Ottinger started the Ottinger Firm in 1999. At the Ottinger Firm, Mr. Ottinger served as lead counsel in over two hundred employment cases involving a wide range of legal claims, a role in which he continues to engage. Mr. Ottinger has handled Fair Labor Standards Act cases since 2008. The Ottinger Firm, in addition to this case, has handled numerous class actions involving wage and hour claims.

I have been an associate at Ottinger Firm since around December 2019 and have nearly nine years of employment law experience. Previously, I worked for two employment law firms that primarily litigate wage and hour cases, including one firm that focuses almost exclusively on class/collective wage and hour litigation and brings national FLSA collective actions. Before then, I worked as a solo practitioner litigating both individual and class/collective wage and hour cases and handled all aspects of litigation. I graduated from Columbia University in 2008, where I won the Bunner Prize for the best senior thesis on American literature. Subsequently, I was awarded the highest scholarship at Brooklyn Law School and graduated in 2012. During law school, I was an intern for a U.S. Magistrate Judge in the Eastern District of New York.

Jessica Massimi is a solo practitioner who has been practicing for over 10 years. Previously, from around July 2019 to October 2019, Ms. Massimi worked for a firm representing employees in wage/hour class and collective actions. From around 2019 to 2019, Ms. Massimi served as president of the Civil Rights Section of the SDNY Chapter of the Federal Bar Association. In a civil rights case, Hon. John G. Koeltl awarded Ms. Massimi an hourly rate of $300. *Alicea v. City of New York*, 272 F. Supp. 3d 603, 611 (S.D.N.Y. 2017) *citing Golding v. City of New York*, 2016 WL 6553759 at *3 (S.D.N.Y. 2016) (concluding a reasonable hourly rate for Massimi was $300). A copy of Ms. Massimi's resume is attached as Exhibit 4.

Tim Hansen is a paralegal at The Ottinger Firm, P.C. Mr. Hansen has over five years of experience spanning across multiple practice areas including family law, intellectual property litigation, personal injury, and employment law. In 2018, Mr. Hansen graduated from Regent

University, magna cum laude, with a Bachelor of Science in Paralegal Studies. Mr. Hansen has worked as a paralegal focusing on employment law related matters for six months.

Thus, the quality of representation weighs in favor of approving the requested fee.

The requested fee is reasonable in relation to the settlement. The settlement agreement provides for a fee and costs of $23,588.80 (one-third of the settlement amount after deducting costs, and costs of $883.20). The proposed fee was consensual and agreed to by all Plaintiffs. Under the Named Plaintiff's contingency fee engagement agreement, Plaintiffs' counsel is entitled to request out of the total recovery one-third in attorneys' fees after deducting costs and recovery of costs. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). All Plaintiffs signed the settlement agreement, which provides for the $23,588.80. While there is no strict limit on the proportion of a settlement that may be allocated to attorneys' fees in FLSA cases, *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604-605 (2d Cir. 2020), "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Martinez v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016); *see also, e.g.*, *Geskina v. Admore Air Conditioning Corp.*, No. 16 Civ. 3096, 2017 U.S. Dist. LEXIS 67583, at *8-9 (S.D.N.Y. May 3, 2017); *Ramirez v. Greenside Corp.*, No. 16 CV 726, 2017 U.S. Dist. LEXIS 30527, at *9-10 (S.D.N.Y. Mar. 3, 2017); *Maldonado v. Srour*, No. 13 Civ. 5856, 2016 U.S. Dist. LEXIS 139881, at *3 (E.D.N.Y. Oct. 6, 2016); *Garcia v. Atlantico Bakery Corp.*, No. 13 Civ. 1904, 2016 U.S. Dist. LEXIS 84631, at *3-4 (S.D.N.Y. June 29, 2016).

Finally, the FLSA is a remedial statute designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a). A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. For the reasons set forth about, we respectfully request that the Court approve the attorneys' fees and costs set forth in the settlement agreement.

Respectfully submitted,

/s/ Finn W. Dusenbery
Finn W. Dusenbery

cc: All Counsel (via ECF)